IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| TREY MANSFIELD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-01396 |
| ) | |
| CITY OF MURFREESBORO, ) | Judge Sharp |
| TENNESSEE, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Plaintiff Trey Mansfield brings claims of retaliation under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215 (a)(3), and Title VII ("Title VII") of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.* Defendant City of Murfreesboro, Tennessee has filed a Motion for Summary Judgment on both claims, to which Plaintiff has responded, and Defendant has replied. The Court will grant Defendant's Motion and this case will be dismissed.

## BACKGROUND

Plaintiff has served in the Murfreesboro Police Department ("MPD") as a police officer with the Uniformed Division since 1999. In 2009, Plaintiff began working as a K-9 handler. He is one of the "longest serving K-9 handlers in the Department." (Docket No. 40 at 2).

In 2011, Plaintiff, and other Murfreesboro police officers, asserted "claims against the City for back pay [over mealtime breaks] under the Fair Labor Standards Act ("FLSA")." (Docket No. 41 at 3). The MPD ended the proposed lawsuit by "implement[ing] policy changes governing . . . non-exempt officer mealtimes" (Docket No. 40 at 4).

1

On August 23, 2012, the Murfreesboro City Manager "received a complaint from [Plaintiff] relating to statements" allegedly made by Major Hudgens ("Hudgens") pertaining to "work schedule changes that affected Officer Mansfield and other K-9 officers." (Docket No. 40 at 6). The parties dispute whether Hudgens's conduct was motivated by Plaintiff's involvement in the FLSA matter.

In 2013, the MPD created a sergeant position for the K-9 Unit. Chief Chrisman announced the position through a memorandum. MPD General Order No. 224 outlines MPD's policy to "select and promote the most qualified personnel through the use of a selection process that is fair, equitable and nondiscriminatory" while also stating that [t]he Chief has . . . discretion" in the selection process. (Docket No. 40 at 12). The hiring Promotion Board had seven members. The parties agree that it ultimately did not include Hudgens "to avoid the possibility of perceived bias against [Plaintiff and Officer Holobaugh]" (Docket No. 40 at 14-15), both of whom filed complaints against Hudgens and applied for the Sergeant K-9 position. Because of his technical expertise, however, Hudgens participated by submitting six interview questions to Chief Chrisman, five of which were asked to applicants.

The Board interviewed the eight applicants who applied for the position and scored each one. Four of these applicants, like Plaintiff, worked in the K-9 unit. Mark Wood ("Wood") was the highest scoring applicant and was ultimately selected for the position. Wood did not work in the K-9 unit, but rather in the Patrol Services Section. He was the only applicant who held the rank of Sergeant. Contrarily, Plaintiff was ranked by only one Board member as the highest ranked officer in a tie with another applicant.

2

Afterward, Chief Chrisman, Deputy Chief Bowen, and Assistant Chief Fields interviewed the applicants in a second round. After narrowing down the selection to Holobaugh and Wood, the three chiefs consulted Hudgens, along with two Captains.

In selecting Wood for the position, Defendant asserts that the chiefs sought an "effective supervisor not merely a K-9 handler." (Docket No. 40 at 18). Plaintiff claims that this reasoning is pretext for retaliation against him for his participation in the FLSA matter and a January 2012 interview he gave in connection with Officer Amy Norville's allegation against Hudgens that he "discriminated against her because of her sex" (Docket No. 40 at 5). Plaintiff opposed Major Hudgens's conduct toward this officer and this was "known to the City, Major Hudgens, and Chief Chrisman at the time of the promotion at issue." (Docket No. 44 at 6).

## **LEGAL STANDARD**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where a moving party without the burden of proof at trial seeks summary judgment, the movant "bears the initial burden of showing that there is no material issue in dispute." Lindsay v. Yates, 578 F.3d 407, 414 (6th Cir. 2009) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "Once a moving party has met its burden of production, 'its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" Blizzard v. Marion Tech. Coll., 698 F.3d 275, 282 (6th Cir. 2012) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). The Court must "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). "Reviewing the facts in the light most favorable to the nonmoving party, the court must ultimately determine whether the

3

evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Blizzard, 698 F.3d at 282 (internal citations and quotations omitted).

A movant with the burden of proof, however, must present evidence "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986) (citation omitted). The movant "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." Arnett v. Myers, 281 F.3d 552, 561 (6th Cir. 2002) (citation omitted). Summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." Hunt v. Cromartie, 526 U.S. 541, 553 (1999).

## ANALYSIS

The claims brought by Plaintiff are subject to a similar analytical framework. Plaintiff can attempt to prove his Title VII and FLSA claims "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." Laster v. City of Kalamazoo, 746 F.3d 714, 730 (6th Cir. 2014), reh'g denied (Apr. 2, 2014) (citing Imwalle v. Reliance Medical Products, Inc., 515 F.3d 531, 538 (6th Cir.2008)); Evans v. Prof'l Transp., Inc., 614 F. App'x 297, 300 (6th Cir. 2015) (internal citations omitted). Circumstantial evidence involves the use of the burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Id. "The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both." Flora Parkhurst, v. American Healthways Services,

4

LLC., No. 3:15-00610, 2016 WL 4591630, at *3 (M.D. Tenn. Sept. 2, 2016) (citing Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997)).[1]

### A. **Direct Evidence**

Plaintiff asserts that Chief Chrisman's statement that Plaintiff had "been openly, vocally critical of the supervision, management, and administration of the K-9 unit and the police department" (Docket No. 40 at 18) is direct evidence that Plaintiff did not receive his promotion because, as Plaintiff asserts, he was interviewed in connection with the "sex discrimination" complaint against Hudgens and because of his involvement in the FLSA matter. This Court disagrees.

"[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful [behavior] was at least a motivating factor in the employer's actions. Consistent with this

---

[1] Recently, the Seventh Circuit admonished trial courts in that circuit to "stop separating 'direct' from 'indirect' evidence" because the "direct-and-indirect framework does nothing to simplify the analysis" and actually "complicates matters by forcing parties to consider the same evidence in multiple ways." Ortiz v. Werner Enter., Inc., 2016 WL 4411434, at *4 (7th Cir. Aug. 19, 2016). "Instead, all evidence belongs in a single pile and must be evaluated as a whole," which is "consistent with McDonnell Douglas and its successors." Id. at *5.

This Court agrees because "evidence is evidence," id. at 4, and it has been repeatedly observed (and juries are routinely charged) that the law makes no distinction between the two types of evidence. See 6th Cir. Pattern Criminal Jury Instruction § 1.06 (2014); 3 O'Malley, Grenig & Lee, Federal Jury Practice and Instructions §101:42 (6th Ed. 2011); compare Stefanski v. W.W. Grainger, Inc., 155 F. App'x 177, 182 (6th Cir. 2005) ("The distinction between 'direct' and 'circumstantial' might puzzle philosophers, but it does not seem to bother lawyers and judges.") with Bartlik v. U.S. Dep't of Labor, 73 F.3d 100, 103 n.5 (6th Cir. 1996) ("The distinction between direct and circumstantial evidence in employment discrimination cases is not self-evident."). After all, the ultimate question in any discrimination case "is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action," and it makes little sense to ask "whether any particular piece of evidence proves the case by itself – or whether just the 'direct' evidence does so, or the 'indirect' evidence." Ortiz, 2016 WL 441434, at *4.

5

definition, direct evidence . . . does not require a factfinder to draw any inferences . . . ." Flora Parkhurst, No. 3:15-00610, 2016 WL 4591630, at *3 (internal citations omitted).

It requires an inference that Chief Chrisman was referring specifically to Plaintiff's involvement in the Title VII and/or FLSA matters when he said Plaintiff was critical of the department. This is not direct evidence.

### B. Indirect Evidence

In the absence of direct evidence, Plaintiff may prove his Title VII and/or FLSA claim under McDonnell Douglas. "Under McDonnell Douglas, Plaintiff bears the initial burden to establish a *prima facie* case of retaliation." Laster, 746 F.3d at 730. "If [Plaintiff] succeeds in making out the elements of a *prima facie* case of retaliation, the burden of production shifts [to the employer] to articulate a legitimate, non-retaliatory reason for the termination[]. If the [employer] satisfies its burden of production, the burden shifts back to [Plaintiff] to show that the reason was a pretext for retaliation. Although the burden of production shifts between the parties, the [Plaintiff] bear[s] the burden of persuasion through the process.'" Evans v. Prof'l Transp., Inc., 614 F. App'x at 300 (6th Cir. 2015) (emphasis added) (internal quotation marks and citation omitted).

"To establish a *prima facie* case of retaliation under Title VII, Plaintiff must demonstrate that: (1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was materially adverse to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." Laster, 746 F.3d at 730 (internal quotation marks and citations omitted). Similarly, "[t]o establish a *prima facie* case of retaliation [under the FLSA], an employee must prove that (1) he or she engaged in a protected activity under the FLSA; (2) his

or her exercise of this right was known by the employer; (3) thereafter, the employer took an employment action adverse to her; and (4) there was a causal connection between the protected activity and the adverse employment action." Adair v. Charter Cnty. of Wayne, 452 F.3d 482, 489 (6th Cir.2006) (internal citation omitted).

The only dispute between the parties with respect to the *prima facie* case is whether the fourth factor, under both Title VII and the FLSA standard has been met. "In order to establish a causal connection between the protected conduct and the adverse action, a plaintiff must produce enough evidence of a retaliatory motive such that a reasonable juror could conclude that the adverse action would not have occurred but for his engagement in protected activity." Russell v. Kloeckner Metals Corp., No. 3-13-0316, 2014 WL 1515527, at *3 (M.D. Tenn. Apr. 18, 2014) (citing Dye v. Office of the Racing Commission, 702 F.3d 286, 205 (6th Cir.2012)); see Univ. of Tex. Sw. Med. Center v. Nassar, 133 S. Ct. 2517, 2532-33 (2013).

Plaintiff alleges that decision-makers knew of his involvement in the Title VII and FLSA matters. It is undisputed that there was tension between Hudgens and Plaintiff which resulted in unpleasant encounters including one where Hudgens admits to saying, albeit in a "joking manner", "I think I'll fuck with [Plaintiff] today." (Docket No. 48-4 at 14-15). Plaintiff came forward with complaints against Hudgens on August 23, 2012 alleging that these instances occurred "over the previous year . . . ." (Docket No. 40 at 6). The parties agree that the new K-9 sergeant position was announced on August 16, 2013 and interviews began on October 14, 2013, over a year after Plaintiff asserted his complaints against Hudgens. This is not a sufficient showing of "temporal proximity." See Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 550 (6th Cir.2008) (stating general rule that temporal proximity in retaliation involves short periods of time, such as four to six months). Nevertheless, the Court recognizes that establishing a *prima*

7

*facie* case is not an onerous burden, Nguyen v. City of Cleveland, 229 F.3d 559 (6th Cir. 2000), and therefore will address the remaining factors of the burden shifting paradigm.

Plaintiff's claims fail at the second and third stage of the McDonnell-Douglas framework. Defendant has articulated a legitimate, non-retaliatory reason for not hiring Plaintiff, specifically, that the "chiefs were looking for an effective supervisor not merely a lead K-9 handler." (Docket No. 40 at 18). Wood was the only applicant with prior supervisory experience as a sergeant, albeit from a different unit, and was the highest ranked overall. Although Plaintiff may believe he was the more qualified candidate "[t]he law does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with." See Burke-Johnson v. Dep't of Veterans Affairs, 211 F. App'x 442, 450 (6th Cir. 2006) (internal quotation marks and citation omitted).

Because Defendant has articulated a legitimate, non-retaliatory reason for not hiring Plaintiff, the burden shifts back to Plaintiff show pretext. While Plaintiff claims Chief Chrisman's reasons are pretextual, he does not show that these reasons have (1) no basis in fact, (2) that they did not actually motivate Chief Chrisman, or that (3) that "they were insufficient to motivate" Chief Chrisman's decision not to hire Plaintiff. Hedrick v Western Reserve Care Sys., 335 F.3d 444, 460 (6th Cir. 2004).

Plaintiff asserts that the chosen applicant was required to have been "a certified canine handler" (Docket No. 40 at 9). As support for this notion he cites Chief Chrisman's memo which stated that the "selected applicant will supervise the K-9 unit in addition to being a patrol, tracking, or canine handler . . . ." Id. However, the use of the word "or" clearly communicates that being a "canine handler" was not a prerequisite. The form itself did not indicate experience with the K-9 unit as a primary responsibility. The memo also stated that the "selected applicant

8

will supervise the K-9 unit" (Docket No. 40 at 9) and required that "the selected applicant . . . successfully complete K-9 training . . ." implying no prerequisite with K-9 experience. Id. (alterations in original). Moreover, the requirements also specified that the selected applicant would be required to supervise, and Wood had supervisory experience in the form of being a shift supervisor. Plaintiff has forwarded nothing to suggest that he was treated any differently than the other four K-9 officers who applied for the position, but were not accepted.

Finally, Plaintiff has failed to establish that Hudgens, his supposed nemesis, was a decision-maker who prevented him from receiving the position. True, Hudgens was consulted, but so too were two Captains. Moreover, at the time those three were consulted, the decision had already been made that the position would go to either Holobaugh or Wood. Even at the first stage, Hudgens's involvement was simply limited to providing interview questions.

## CONCLUSION

On the basis of the foregoing, the Motion for Summary Judgment will be granted and this case will be dismissed. A separate Order shall follow.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE